**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JONATHAN SOR, an Individual,** | |
| **Plaintiff,** | |
| | Case No. |
| **v.** | |
| | Judge: |
| **TCF NATIONAL HOLDINGS, INC., a Delaware Corporation, MARCIN CHOJNACKI, an Individual, LAURENA MIKOSZ, an Individual, KATHLEEN LONG, an Individual, CHASE REAL ESTATE, LLC, an Illinois Limited Liability Company, MIDWEST TITLE AND CLOSING SERVICES LLC an Illinois Limited Liability Company, MAINSTREET PROPERTY MANAGEMENT LLC, an Illinois Limited Liability Company, EJ INVESTMENT GROUP INC. a Delaware Corporation, CITYPOINT ILLINOIS LLC, an Illinois Limited Liability Company, and Defendant RACHEL IRWIN, an Individual,** | Magistrate: |
| **Defendants.** | |

**<u>COMPLAINT</u>**

NOW COME the Plaintiff, JONATHAN SOR, by and through his attorneys, GASPERO & GASPERO, ATTORNEYS AT LAW, P.C., and in complaining against the Defendant MARCIN CHOJNACKI, LAURENA MIKOSZ, KATHLEEN LONG, CHASE REAL ESTATE, LLC, an Illinois Limited Liability Company, MIDWEST TITLE AND CLOSING

SERVICES LLC, an Illinois Limited Liability Company,  MAINSTREET PROPERTY

MANAGEMENT LLC, an Illinois Limited Liability Company,  EJ INVESTMENT GROUP

INC., a Delaware Corporation,  TCF NATIONAL HOLDINGS, INC., a Delaware Corporation,

CITYPOINT ILLINOIS LLC, an Illinois Limited Liability Company, and RACHEL IRWIN,

allege as follows:

### JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in

that the Plaintiff asserts claims arising under the Racketeer Influenced and Corrupt Organizations

Act 18, U.S.C. § 1962.

This Court has jurisdiction over this action pursuant to 28 U.S. Code § 1332(a)(1)

whereas the Plaintiffs are citizens of the State of California, and the Defendants are citizens of

Illinois and Delaware. The amount in controversy, exclusive of costs, exceeds $75,000.

This Court has supplemental jurisdiction over the Plaintiff's state law claims, pursuant to

28 U.S. § 1367.

## VENUE

Venue is proper in this District pursuant 18 U.S.C. § 1965 and 28 U.S. Code § 1391(c)(2), whereas multiple Defendants are residents of Illinois and the real estate at issue is located in Illinois.

Venue is proper in this District pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this judicial district and reside in this district.

## PARTIES

1.      Plaintiff JONATHAN SOR ("Jonathan"), an individual, is a citizen of California.

2.      Defendant MARCIN CHOJNACKI ("Chojnacki"), an individual, is a citizen of Illinois and an Illinois licensed real estate broker.

3.      Defendant LAURENA MIKOSZ ("Mikosz"), an individual, is a citizen of Illinois and an Illinois licensed real estate broker.

4.      Defendant KATHLEEN LONG, an individual, is a citizen of Illinois and is the President and sole director of Defendant TCF National Holdings, Inc., 611 Dartmouth Lane, Schaumburg, Illinois.

5.      Defendant TCF National Holdings, Inc. (TCF National) is a Delaware Corporation authorized to do business in Illinois with its principal place of business in Delaware at 8 The Green Street, Dover, Delaware.  TCF National Holdings is a citizen of Delaware and Illinois.

6.      Defendant CHASE REAL ESTATE, LLC ("Chase Real Estate") is an Illinois LLC that is a citizen of Illinois in that all its members are citizens of Illinois.

7.     Defendant MIDWEST TITLE AND CLOSING SERVICES LLC ("Midwest Title") is an Illinois Limited Liability Company managed by XYZABC, Inc., a Delaware Corporation with its principal place of business in Illinois.  Midwest Title is a citizen of Illinois in that all its members are citizens of Illinois.

8.     Defendant RACHEL IRWIN ("Irwin") is a citizen of Illinois and an attorney licensed to practice law in Illinois.  Rachel Irwin is employed by Midwest Title.   Irwin is also the General Counsel and Illinois registered agent of EJ INVESTMENT GROUP INC. and Defendant MAINSTREET PROPERTY MANAGEMENT LLC.  Irwin was also the agent appointed as Power of Attorney on behalf of sellers in the transaction giving rise to this matter. Irwin is also the President and sole Director of XYZABC, Inc., and the manager of Defendant Midwest Title (above).

9.     Defendant MAINSTREET PROPERTY MANAGEMENT ("Mainstreet Management") is an Illinois Limited Liability Company managed by EJ INVESTMENT GROUP INC. ("EJ Investment Group"). Defendant Mainstreet Management is a citizen of Illinois in that all its members are citizens of Illinois.

10.    Defendant EJ INVESTMENT GROUP is a Delaware Corporation.   Defendant CHOJNACKI is the President of EJ Investment Group.   Defendant EJ INVESTMENT GROUP is a citizen of Illinois in that its principal place of business is in Illinois.

11.    CITIPOINT PROPERTIES appears to have been an un-incorporated enterprise organized by Defendant CHOJNACKI which held itself out as a real estate investment company for the purposes of inducing and capitalizing from out-of-state investors in connection with Illinois real estate.  On December 28, 2022 this un-incorporated enterprise appears to have organized itself as Defendant CITYPOINT ILLINOIS LLC, an Illinois Limited Liability

Company ("Citypoint"). The allegations set forth herein cover time periods when this enterprise was both un-incorporated and incorporated. Citypoint Illinois LLC is a citizen of Illinois in that all its members are citizens of Illinois.

12.     At all times relevant herein, Defendants CHOJNACKI and LONG were paramours and cohabitants.

13.     Defendants IRWIN, CHOJNACKI, MIKOSZ, MAINSTREET MANAGEMENT, AND EJ INVESTMENT GROUP all operate out of the same office space located at 25-41 E. Main Street Suite 204, Roselle, IL 60172.

14.     Defendant TCF NATIONAL HOLDINGS and the newly formed CITYPOINT ILLINOIS LLC both operate out of 8 The Green Street, Dover, Delaware, 19901.

## ALLEGATIONS COMMON TO ALL COUNTS

15.     Plaintiff Jonathan Sor (hereinafter "Jonathan") is a young professional who was seeking to invest in real estate to provide a steady source of income for himself and his family.

16.     Beginning on December 22, 2021, Defendant TCF National was the owner of real estate commonly known as 3060 Bernice, Lansing, Illinois (the "3060 Bernice" property).

17.     Beginning on December 20, 2021, Defendant TCF National was the owner of the real estate commonly known as 3068 Bernice, Lansing, Illinois (the "3068 Bernice" property).

18.     This matter pertains to both the 3060 Bernice and the 3068 Bernice properties.

19.     In approximately July 2021, Jonathan learned of multi-family real estate investment opportunities from "CitiPoint Properties." CitiPoint properties (hereinafter "CitiPoint") identified itself as a source for connecting investors to undervalued and underperforming properties – carrying the promise of rapidly increasing equity and high cash flow.

20. This alleged connection between the target investor and the alleged owner of "off-market" properties was referred to as an offering of "directly sourced" properties.

21. This promise of rapidly increasing equity and high cash flow appeared to be a good idea to Jonathan.

22. Jonathan sent a query to Defendant Mikosz, asking about multi-family real estate opportunities with CitiPoint.

23. Jonathan's query to Mikosz evolved into sustained email, text and phone interactions throughout the summer of 2021 through which Mikosz drew Jonathan into the scheme giving rise to this action.

24. In these email, text and phone interactions, Mikosz told Jonathan that she was a real estate broker with Chase Real Estate, which is affiliated with CitiPoint. Mikosz told Jonathan that her managing broker was Marcin Chojnacki, who was also a Chase Real Estate agent.

25. Mikosz actively led Jonathan to believe that since she and Chojnacki were agents of Chase Real Estate, and because CitiPoint is affiliated with Chase Real Estate, that the transactions would be safely negotiated and consummated under the auspices of Chase Real Estate.

26. At all times relevant herein, the website for CitiPoint was a virtual reflection of the website for Chase Real Estate (See printed copy of the CitiPoint website as of January 27, 2023 attached as Exhibit 1 and the Chase Real Estate Website at Exhibit 2 as of February 24, 2023). Both websites were significantly revised prior to and since the attached captures. Prior to the revisions and at the times relevant to the facts alleged herein, the websites were of the same design motif and were virtually identical to each other.

27.     Jonathan was assured by Mikosz that if he invested with CitiPoint, he would be directly purchasing buildings that were underperforming because those buildings were owned and self-managed by local landlords.  Mikosz described these local landlords as "retiring" "old" and "unable" to handle real estate anymore.

28.     The false promise that the property was owned and self-managed by a local, unprofessional landlord allowed Mikosz to foster the proposition that 1) the property could be acquired from the local individual at a bargain price and 2) once the property was managed properly (with the help of Chojnacki's affiliate property management company, Mainstreet Management), the investor (Jonathan) could expect substantial cash flow and rapidly increasing equity.

29.     Contrary to the complex of misrepresentations and calculated omissions of the Defendants, the properties were actually owned by entities controlled by Defendants – acquired just prior to Jonathan's acquisition for significantly less than what Jonathan paid.

30.     Jonathan entered into two contracts for purchase of Illinois real estate with the Defendants in late September 2021, during which time the Defendants successfully misled Jonathan with a complex scheme of fraudulent misrepresentations as to the ownership, condition and the tenancy status of the properties as set forth below.

31.     In approximately September 2021, Mikosz sent Jonathan information via email regarding the 3060 Bernice property and the 3068 Bernice property.

32.     Mikosz told Jonathan that the properties were both currently owned by longtime sellers who took great pride in their building ownership.  Both buildings were multi-unit buildings.  Mikosz further assured Jonathan that the properties were in good condition and fully rented with all the tenants paying on time.

33. Mikosz told Jonathan that both properties were in good condition.

34. Mikosz told Jonathan that once he purchased them, and with Defendant Mainstreet Management's "property management" assistance, these properties would be very profitable.

35. Mikosz provided Jonathan with information specific to the 3060 Bernice property showing the building was well maintained, fully rented, and with tenants current in their rent.

36. Mikosz provided information to Jonathan supporting the proposition that the 3060 Bernice property would be profitable at the purchase price of $525,000.00.

37. Mikosz also provided Jonathan with information specific to the 3068 Bernice property showing the building was well maintained, fully rented, and with tenants current in their rent.

38. Mikosz provided information to Jonathan supporting the proposition that the 3068 Bernice property would be profitable at the purchase price of $450,000.00.

39. Mikosz told Jonathan that both properties' then-current value was significantly higher than their offer prices of $525,000.00 and $450,000.00 – thus the buildings' purchases at those offered prices would be a bargain and would produce immediate equity to Jonathan.

40. In reality, the value of the 3060 Bernice property was $360,000.00. That was the price at which the Defendants had paid the "longtime" and/or "widower" landlord the day before turning it around and selling it to Jonathan for $525,000.00 – all without any disclosure to Jonathan.

41. Moreover, the value of the 3068 Bernice property was $335,000.00. That was the price at which the Defendants had paid the "longtime" and/or "widower" landlord three days

before turning it around and selling it to Jonathan for $450,000.00 – all without any disclosure to Jonathan.

42.     The information Defendants provided to Jonathan and his lender included rent information and other financials which showed both buildings current in rent.  This information was provided to induce Jonathan to consummate the transaction, as well as to the lender to assist Jonathan in acquiring financing and justifying the grossly inflated purchase price.

43.     The financial information provided by Defendants to Jonathan and his lender was a fabrication of the Defendants.  The tenancy of the building was in distress and the rentals were in varying degrees of delinquency and un-collectability.

44.     Mikosz had actual knowledge that the information she provided to Jonathan was false.

45.     Contrary to her representations, Mikosz had actual knowledge that Jonathan's sellers for the 3060 Bernice and 3068 Bernice properties were not "longtime" and "widower" landlords, but in fact was, in both cases,  TCF National, an entity controlled and owned by Defendant Chojnacki's then paramour Kathleen Long.

46.     Defendant Long signed the purchase agreements for both properties as seller, with Rachel Irwin signing as seller's attorney.  (See Purchase Agreements attached as Exhibits 3 and 4).

47.     Contrary to her representations, Mikosz had actual knowledge that the 3060 Bernice and 3068 Bernice properties were not fully leased with tenants who were all current at the time these representations were made to Jonathan.

48.     Contrary to her representations, Mikosz had actual knowledge that the 3060 Bernice and 3068 Bernice properties were not in good condition, and in fact were in poor condition.

49.     Mikosz continued to describe herself to Jonathan as his real estate agent and representative in the transaction.  However, Mikosz actually was an affiliate, was employed by, and/or was an agent of Defendant Chojnacki's then-paramour Long – who had secretly contracted to purchase the properties themselves before turning around and immediately selling them to Jonathan at a grossly inflated price, all without disclosure to Jonathan.

50.     Believing Mikosz's misrepresentations, Jonathan entered into a contract to purchase the 3060 Bernice property on September 28, 2021 and a contract to purchase the 3068 Bernice property on September 30, 2021. (See Exhibits 3 and 4).

51.     On December 23, 2021, Jonathan closed on the 3060 Bernice property, at which time he acquired title to the 3060 Property.  As indicated earlier, the purchase price was $525,000.00.  Defendant Long, via Defendant TCF National, had purchased the property the day before, on December 22, 2021, for $360,00.00, all without disclosure to Jonathan. (See Deed to Defendants, attached as Exhibit 5 and Deed to Jonathan, attached as Exhibit 6).

52.     Defendant Chase Real Estate received a Commission of $18,375.00 at the closing of the transaction.

53.     The Seller was not a "widower" or "longtime" landlord.   TCF National had owned the building just one day and its President and "sole director" was Long, Chojnacki's then-paramour and cohabitant.

54.     Also on December 23, 2021, Jonathan closed on the 3068 Bernice property, at which time he acquired title to the 3068 Bernice property. The purchase price was $450,000.00.

Defendant Long, via Defendant TCF National, had purchased the property three days before, on December 20, 2021, for $335,000.00, all without disclosure to Jonathan. (See Deed to Defendants, attached as Exhibit 7, and Deed to Jonathan, attached as Exhibit 8).

55.     Chase Real Estate received a Commission of $15,750.00 at the closing of the transaction.

56.     The Seller was not a "widower" or "longtime" landlord.   TCF National had owned the buildings just three days before and its President and "sole director" was Long, Chojnacki's then-paramour and cohabitant.

"Seller Needs These to Close 12/20"

57.     At all times herein, Irwin was acting as an agent of Defendants, including but not limited to Defendants Midwest Title and TCF National Holdings, Inc.

58.     Midwest Title and Irwin played a significant role in the transactions by providing registered agent services to the various entities, housing various legal operations appurtenant to the entities and transactions, and provided corroboration for the fiction that the sellers are long-standing owners and not the Defendants.

59.     Notably, during the final stages of the preparation for the two Bernice property closings, Defendant Rachel Irwin, as "seller's attorney" and as Director of Midwest Title, sent two emails to Jonathan, Jonathan's lender, and his attorney.  Irwin's first email, sent on December 13, 2021 at 10:47 a.m. states:

> **All:  My client is looking to close both 3060 and 3068 Bernice on 12/20.  Is this possible? How is (sic) final conditions coming along?**

(See Exhibit 9).

60.     When Jonathan's attorney responded that they needed one more week due to financing, Defendant Irwin, at 11:59 a.m. on that same day, became more insistent:

**What is the ETA on CTC? Seller needs these to close 12/20...**

(See Exhibit 9).

61.    At the time of these emails, Defendant Irwin's "client" (TCF National Holdings) did not yet own the properties.

62.    On information and belief, Defendant Irwin "needed" Jonathan's purchase to be completed on December 20, 2021, so that Defendants could have the funding for their own purchase of the same property that day, again all without disclosure to Jonathan.

### Mainstreet Management, EJ Investment Group and Chojnacki:
### Missing Rents and Fabricated Billings

63.    Following the closings on the two properties, Jonathan agreed to have Defendant Chojnacki's management companies (Defendant Mainstreet Management and EJ Investment Group) manage the properties after closing.  Chojnacki and Mikosz told Jonathan this would ensure that he would make a lot of money as they would manage the properties correctly.

64.    In reality, this part of the scam provided opportunities for the Defendants to engage in post-closing fraudulent activity by:

      a)  continued concealment of and falsification of rent records;

      b)  continued concealment of building occupancy and code violations;

      c)  exorbitant charges for work; and

      d)  fabricated billing and/or payments to affiliates for non-existent, incomplete and/or substandard work on the properties.

65.    Defendants Mainstreet Management and EJ Investment Group, acting through Defendant Chojnacki and Defendant TCF National Holdings, Inc. and Long, fraudulently misrepresented the condition of and the tenancy status of the properties to Jonathan.

66.    Because of the grossly inflated sales price, and the varying degrees of tenant delinquency and un-collectability of rents, and because of actively concealed building code

violations requiring repair in order to allow legal occupancy, Jonathan has yet to see any meaningful return for either the 3060 Bernice or 3068 Bernice transactions.

67.     In January, 2022, immediately after the December 23, 2021 closing, Jonathan contacted Mainstreet Management, Mikosz, and Chojnacki regarding the missing rents he should have received for the properties.

68.     Jonathan's questions were never answered by Mikosz and Chojnacki, and his full rents were simply not received.

69.     Adding to the problems, Defendant Mainstreet and EJ Investment Group continued to charge Jonathan for a variety of exorbitant and unspecified expenses.

70.     Defendant Mainstreet and EJ Investment Group also charged Jonathan for work that was never performed, or was performed inadequately.

71.     Jonathan received numerous building code violations from the City of Lansing that had existed prior to his purchase of the building.  These code violations were never disclosed to him.

72.     When Jonathan would arrange for Mikosz, Chojnacki, or Mainstreet and/or EJ Investment Group to hire contractors to fix the violations, the work was either not performed, despite Jonathan's payments, or was performed so inadequately that he continued to receive notices and violations from the City of Lansing.

73.     Jonathan spoke frequently to Defendant Chojnacki and Defendant Mikosz regarding these problems throughout the year.  They promised Jonathan the issues would be brought under control, but nothing was ever done to correct the problems or explain the exorbitant charges and billing.

74. In his efforts to determine why everything was such a mess, Jonathan asked about the prior owners.

75. Mikosz told Jonathan that sadly, "I met one the owners once, and his wife used to manage (she passed away and that's why he decided to sell)."

76. Throughout the next year, despite many promises, Defendants continued to actively conceal the facts concerning the property status, the falsified rent and tenant information, and the fact that Defendant Chojnacki's then-cohabitant and paramour Long had actually sold Jonathan the properties at a grossly inflated price.

77. In response to Jonathan's growing frustration, Mikosz and Chojnacki continued to tell Jonathan that he got a "really good deal" and paid a "low price" on the Bernice properties, which was of course, untrue.

78. Mikosz continued to solicit Jonathan to purchase additional properties, all with the promise that these properties would bring substantial cash flow.

79. At no time did Defendant Mikosz or Chojnacki disclose any conflict of interest.

80. As stated above, Defendants Irwin, Chojnacki, Mikosz, Midwest Title, and Mainstreet Management and EJ Investment Group are all located at and operate out of the same office space.

81. Defendant Chojnacki did not disclose that he had a conflict of interest in that his then cohabitant and paramour, Long, was an owner and controller of the TCF National Holdings, Inc.

82. Defendants have attempted to induce Jonathan to repeat the scam with additional properties offered by the Defendants.

83.     Defendants have treated other individuals or entities in the same illegal manner alleged by the Plaintiffs.  There are eight specific additional individuals and/or entities who were similarly defrauded by precisely or nearly precisely the same pattern of artifices and fraudulent misrepresentations as set forth in this Complaint.

84.     The Defendants are, at present, continuing to lure investors into the enterprise using the same scheme and under the same guises as those set forth herein. Accordingly, the conduct alleged herein constitutes the Defendants' regular method of conducting their business.

## COUNT I:  RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO) - 18 U.S.C. 1962(c), (d)

### (Defendants Chojnacki, Mikosz, Long, TCF National Holdings, Inc., and Citypoint Illinois LLC)

Plaintiffs Jonathan Sor re-states and re-alleges Paragraphs 1 through 84 as though fully stated herein.

### RICO Persons

85.     Defendants Chojnacki, Mikosz, Long, Citypoint Illinois LLC, and TCF National Holdings, Inc., are each capable of holding a legal or beneficial interest in property, and therefore each is a "person" within the meaning of 18 U.S.C. § 1961(3).

### The Rico Enterprise

86.     Defendants Chojnacki, Mikosz, Long, Citypoint Illinois LLC, and TCF National Holdings, Inc., were associated in fact, and constituted an "enterprise" as that term is defined in Title 18, United States Code, Section 1961(4), which enterprise was engaged in, and the activities of which affected, interstate commerce. This enterprise shall be referred to herein as the "CitiPoint Enterprise."

87.     The CitiPoint Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

88.     The primary purpose of the CitiPoint Enterprise was to lure and then fleece unsuspecting real estate investors for the financial benefit of CitiPoint.

89.     For the purpose of 18 U.S.C. § 1962(c), and during the periods relevant to this complaint, Defendants Chojnacki and Mikosz each had authority within the CitiPoint Enterprise,

16

and/or conducted or participated, directly or indirectly, in the conduct of the CitiPoint Enterprise's affairs through the pattern of racketeering activity described herein.

## Effect on Interstate Commerce

90. The CitiPoint Enterprise conducted its racketeering activity, in part, using the interstate mails and wire communications, including by use of the telephones, by electronic transfers of funds, by internet communications, and through the mailing of checks.

## Predicate Acts of Racketeering Activity

91. Through the CitiPoint Enterprise, or in conspiracy with it, the Defendants conducted, engaged in, and participated in a pattern of racketeering activity, consisting, at a minimum, of the following predicate acts: (a) multiple violations of Title 18, United State Code, Sections § 1341, 1343, and 1346 (mail fraud and wire fraud). The scheme to defraud was advanced, concealed or furthered by the use of the U.S. mail or wires.

92. Specifically, the Defendants' predicate acts include, but are not limited to, the following:

   a) In furtherance of a scheme or artifice to defraud as defined in 18 U.S.C. §§ 1341 & 1346, and with specific intent to defraud, Defendants placed ads on the Internet and on social media with the intent to induce investors to participate in "directly sourced" real estate opportunities when they actually intended to sell the duped investor their own significantly marked-up property.

   b) Engaging in a sustained fiction with the victim, replete with misrepresentations and calculated omissions to keep the investor misled that their transactional counterpart was a "longtime landlord" or "widower landlord" selling the property directly to the investor at bargain level pricing.

   c) Fabricating occupancy records of the property to mislead the investor with the falsehood that that property was fully-leased and the tenant payments were fully current.

d)  Concealing and misrepresenting known significant building code and occupancy violations from the investor with the intent of inducing the investor to enter into the transaction.

e)  Engaging in post-closing fraudulent activity in the management of the property by 1) continued concealment of and falsification of rent records; 2) continued concealment of building occupancy and code violations; 3) exorbitant charges for work on the undisclosed violations; and 4) fabricated billing and/or payments to affiliates for non-existent, incomplete and/or substandard work on the code violations.

## Pattern of Racketeering Activity

93.    The Defendants acted, and conspired to act together, and in association with others knowingly and repeatedly committed the above fraudulent acts in furtherance of and for the purpose of enriching themselves financially and to otherwise further the ends of the CitiPoint Enterprise.

94.    The predicate acts described above were related to one another as part of a common scheme or plan.

95.    Such unlawful conduct constituted a continuous pattern of racketeering activity beginning as early as July 2021, continue through the present, and are likely to continue into the foreseeable future.

## Conspiracy (18 U.S.C. § 1962(d))

**(Defendants Midwest Title and Closing Services LLC, Irwin, EJ Investment Group Inc., and Chase Real Estate, LLC)**

96.    As described above, Defendants Midwest Title and Closing Services LLC, Irwin, EJ Investment Group Inc., and Chase Real Estate, LLC, did knowingly agree to facilitate the CitiPoint Enterprise Defendants, and those acting in concert with them, to violate 18 U.S.C. §

1962(c) for the purpose of achieving and profiting from the racketeering activities described above.

97.     In furtherance of that agreement, the Defendants knowingly and intentionally agreed and conspired to commit at least two of the predicate acts set forth above and they did so with the knowledge and intent that such acts were in furtherance of the foregoing pattern of racketeering.

98.     Specifically, the Defendants described herein were either affiliated or controlled by the CitiPoint Enterprise Defendants

99.     The Defendants described herein knowingly provided auxiliary services with respect to the marketing, negotiation, and transaction of real estate closing services which were necessary to and facilitated the accomplishment of the goals of the CitiPoint Enterprise.

100.     Defendant Chase Real Estate LLC provided the cover of a legitimate real estate brokerage enterprise, oversaw the conduct and behavior of Mikosz and Chojnacki, and received a commission from TCF National Holdings, Inc. (the seller) notwithstanding the fact that at all relevant times herein, Chase Real Estate LLC held itself out as Plaintiff's agent.

101.     Defendant Irwin is forming at least some of the layers of shell entities, providing misinformation about the real estate, executing deeds, acting as officer and/or principal for the enterprise's entities, and acting as their counsel in the negotiations and transactions wherein the real estate is conveyed to the investor, or in this matter, acts as counsel for the fictitious "longtime" or "widower" landlord.

### Injuries to the Plaintiff Business and Property

102.     As a direct and proximate cause of the described racketeering activities and violations of 18 U.S.C. § 1962(c), and the described conspiracy in violation of 18 U.S.C. §

1962(d), the Plaintiff has been injured in his business and property. The Defendants'
racketeering activities caused the Plaintiff to invest $975,000.00 in real estate which the
Defendants had actual knowledge was worth far less and said racketeering activities directly
resulted and were the proximate cause of the Plaintiff's loss of invested funds.

103.     The Defendants' racketeering activities further caused the Plaintiff substantial
damages due to the fact that the Properties were either not certified for occupancy and thus un-
rentable due to multiple severe violations of municipal occupancy and code violations that were
known and hidden from the Plaintiff or requiring significant repairs at a substantial expense to
Plaintiff.

104.     The Defendants racketeering activities further caused the Plaintiff substantial
damages due to the fact that numerous tenants in the Properties were not paying rent and eviction
proceedings were necessary.

105.     These injuries were a foreseeable consequence of the Defendants' racketeering
activities and violations of 18 U.S.C. § 1962(c), and their conspiracy in furtherance of those
racketeering violations, in violation of 18 U.S.C. § 1962(d).

**WHEREFORE**, Plaintiff JONATHAN SOR respectfully request the Court to enter
judgment in his favor and against each of the CitiPoint Enterprise Defendants and their
conspirators and order the following relief:

(a) All damages proven pursuant to RICO, trebled as permitted by law;

(b) Punitive damages, attorney fees, and costs as permitted by law; and

(c) Such other and further relief as the Court may deem just and appropriate.

## COUNT II: COMMON LAW FRAUD

106.     Plaintiff restates Paragraphs 1 through 105 as if fully set forth herein.

107.     Defendant Mikosz and Chojnacki's statements set forth above concerning the Properties, their condition, and their leased status were false statements of material fact.

108.     Defendants Mikosz and Chojnacki made the statements with knowledge that they were false.

109.     Defendants Mikosz and Chojnacki made the false statements with the intention to induce the Plaintiff to purchase the Properties under falsified premises.

110.     Plaintiff reasonably and justifiably relied on the said Defendants' false statements.

111.     The Plaintiff suffered damages due to reliance on the false statements.

112.     The said Defendants made the false representations as agents of the affiliated corporate defendants as set forth herein.

113.     Accordingly, the Defendants' statements, Plaintiff's reliance thereon, and resulting damages constitute common law fraud.

WHEREFORE, Plaintiff, JONATHAN SOR, prays that this Honorable Court enter judgment in his favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

**COUNT III: VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (CONSUMER FRAUD ACT)**

114.     Plaintiff re-states Paragraphs 1 through 113 above as if fully set forth herein.

115.     Defendants Mikosz and Chojnacki's statements, including but not limited to their statements set forth above concerning the Property, its condition, and its leased status were false statements of material fact and constituted a deceptive act or practice by the said Defendants.

116.     Defendants Mikosz and Chojnacki intended that the Plaintiff rely on the deception.

117.     The occurrence of the deception was in the course of conduct involving trade and commerce.

118.     The deceptions were originated by residents of Illinois, concern Illinois real estate, and have resulted in violations of Illinois municipal laws.  Accordingly, the conduct alleged herein directly and indirectly affect the State of Illinois.

119.     The deception was the proximate cause of actual damage to the Plaintiff.

120.     The said Defendants made the false representations as agents of the affiliated corporate defendants as set forth herein.

121.     Accordingly, the conduct of deception perpetrated by Defendants constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

WHEREFORE, Plaintiff, JONATHAN SOR, prays that this Honorable Court enter judgment in his favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus his costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

## COUNT IV: VIOLATION OF THE ILLINOIS REAL ESTATE LICENSE ACT

122.    Plaintiff re-states Paragraphs 1 through 121 above as if fully set forth herein.

123.    Defendants Mikosz and Chojnacki provided real estate services in this transaction as agents of Chase Real Estate LLC.

124.    Defendants Mikosz, Chojnacki and Chase Real Estate LLC were "Licensees" under the Real Estate License Act, 225 ILCS 454/1-1 *et seq.*

125.    Section 15-25 of the Real Estate License Act mandates that:

> Licensees shall treat all customers honestly and shall not negligently or knowingly give them false information.

126.    Section 15-5 of the Real Estate License Act specifies that:

> This Article 15 may serve as a basis for private rights of action and defenses by sellers, buyers, landlords, tenants, real estate brokers, and real estate salespersons.

127.    Defendants Mikosz, Chojnacki and Chase Real Estate LLC breached the requirements of the Real Estate License Act by committing the following actions:

a) fraudulently misrepresenting that they represented the Plaintiffs as buyer when in actuality they represented, were affiliates of and/or were direct agents of the seller;

b) fraudulently misstating the condition of the Property;

c) fraudulently misstating the tenancy of the Property;

d) fraudulent falsification of the purported rent roll;

e) fraudulently misrepresenting to the Plaintiffs that the seller in the transaction was a directly sourced, off-market seller when in truth the Seller was comprised of, directly affiliated with or controlled by the Defendants themselves or were agents thereof;

128.    Plaintiffs relied on Defendants Mikosz, Chojnacki and Chase Real Estate LLC's statements and suffered damages therefrom.

WHEREFORE, Plaintiff, JONATHAN SOR, prays that this Honorable Court enter judgment in his favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

## COUNT V:  NEGLIGENT MISREPRESENTATION

129.    Plaintiff re-states Paragraphs 1 through 128 above as if fully set forth herein.

130.    Defendants Mikosz and Chojnacki's statements, including but not limited to their statements set forth above concerning the Property, its condition, and its leased status were negligent and/or false statements of material fact.

131.    Defendants Mikosz and Chojnacki made the false statements through carelessness or negligence in ascertaining the truth of the statement by the party making it.

132.    Defendants Mikosz and Chojnacki' false statements were made with intention to induce the Plaintiff to act.

133.    The Plaintiff's actions in consummating the transaction were in reliance on the false and/or careless statements.

134.    Plaintiff's reliance was the proximate cause of damage to the Plaintiff.

135.    The said Defendants made the false and/or careless representations as agents of the affiliated corporate defendants as set forth herein.

136.    Defendants Mikosz and Chojnacki's statements therefore constitute Negligent Representation.

WHEREFORE, Plaintiff, JONATHAN SOR, prays that this Honorable Court enter judgment in his favor and against DEFENDANTS in an amount in excess of the jurisdictional

limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

## COUNT VI
## UNJUST ENRICHMENT

137.    The Plaintiff realleges and incorporates by reference herein the allegations of Paragraphs 1-136 of this Complaint, as if fully set forth herein.

138.    Defendants did conspire and collude in the undertaking to mislead Jonathan into believing he would be acquiring investment property directly from a long-time seller.

139.    Jonathan believed and relied on Defendants' scheme of misleading statements and conduct when he agreed to buy the Properties from Defendants, who had secretly already purchased the Properties directly from the long-time seller for $280,000 less than the amount that they fraudulently induced Jonathan to pay.

140.    Jonathan further relied on the Defendant's representations with respect to the fraudulent billings.

141.    The direct and proximate cause of the Defendants was to deprive the Plaintiff of the fair bargain they had promised him.

142.    As a consequence of receiving and retaining the $280,000 And other amounts including but not limited to the fraudulent billings, the Defendants have unjustly retained a benefit to the Plaintiff's detriment, and Defendants' retention of the benefit violates the fundamental principles of justice, equity, and good conscience.

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in his favor and against each of Defendants and order the following relief:

a)   Payment to the Plaintiff of the benefit that they received as a consequence of their fraudulent misrepresentations being the

difference between the purchase price of the Property paid by Plaintiff and that paid by themselves or such other amount to be proven at trial;

b) Punitive damages, attorney fees, and costs as permitted by law; and

c) Such other and further relief as the Court may deem just and appropriate.

Respectfully Submitted,

/s/Carmen Gaspero

_____

/s/Lisa Gaspero

_____

Plaintiff JONATHAN SOR
By: His Counsel

Gaspero & Gaspero
Attorneys at Law, P.C.
Carmen A. Gaspero
Lisa M. Gaspero
2001 Butterfield Rd., Suite 1022
Downers Grove, Illinois 60515
630-687-9700