IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONATHAN SOR, | ) |
|         *Plaintiff*, | ) No. 23 C 2401 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| TCF NATIONAL HOLDINGS, INC., et al., | ) |
|         *Defendants*. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jonathan Sor claims Defendants Laurena "Lori" Mikosz and Marcin Chojnacki tricked him into buying two run-down apartment buildings. While holding themselves out as Sor's real-estate brokers, Mikosz and Chojnacki allegedly fed him false assurances about the buildings' condition and profitability. Behind the scenes, Mikosz's and Chojnacki's associates, the remaining Defendants, through various puppet entities, bought the buildings and resold them to Sor at a significant markup. Sor sued, alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c), (d), and various state-law claims. (Dkt. 1). Defendants now move to dismiss. (Dkt. 23). For the reasons below, the motion [23] is denied.

## BACKGROUND

In July 2021, Plaintiff Jonathan Sor, a California citizen, learned about CitiPoint Properties ("CitiPoint"), a company that helped real-estate investors find undervalued and underperforming properties—so-called "directly sourced" properties. (Dkt. 1 ¶¶ 1, 19–20).[1] CitiPoint promised "rapidly increasing equity and high cash flow." (*Id.* at ¶ 19). Sor sent a query to Defendant Lori Mikosz, who was in Illinois, about the investing opportunities. (*Id.* at ¶ 22). This query led to

---

[1] At the time, CitiPoint was an "unincorporated enterprise," organized by Defendant Marcin Chojnacki, that appeared to be a real-estate investment firm. (*Id.* at ¶ 11). Later, on December 28, 2022, CitiPoint reorganized as Citypoint Illinois LLC, which is owned and controlled by nonparty Citypoint Group, Inc. (*Id.*)

1

"sustained email, text and phone interactions throughout the summer of 2021." (*Id.* at ¶ 23). Mikosz explained to Sor that her company introduces investors to "local landlords" who were "retiring," "old," and "unable" to manage their properties. (*Id.* at ¶¶ 24, 27). Mikosz said that she and her managing broker Chojnacki were real-estate brokers with Chase Real Estate, LLC ("Chase RE"), an affiliate of CitiPoint. (*Id.* at ¶ 24). Mikosz explained that Sor could invest in a building that was underperforming due to its ownership and self-management by a local, unprofessional landlord. (*Id.* at ¶ 27–28). By purchasing property at a bargain and using an affiliated property-management service, Defendant Mainstreet Property Management LLC ("Mainstreet"), Mikosz proposed, Sor could expect "substantial cash flow." (*Id.* at ¶ 28). Mikosz led Sor to believe that Mikosz and Chojnacki would represent him as agents of Chase RE, and "the transactions would be safely negotiated and consummated under the auspices of Chase Real Estate." (*Id.* at ¶ 25). At the time, the CitiPoint website was "a virtual reflection" of Chase RE's website. (*Id.* at ¶ 26; *see* Dkts. 1-1, 1-2).

Around September 2021, Mikosz emailed Sor with information about two multi-unit properties that Sor later purchased: the 3060 Bernice Property and the 3068 Bernice Property ("the Bernice Properties") in Illinois. (Dkt. 1 ¶¶ 30–31). Mikosz told Sor that both properties were owned by "longtime" or "widower" landlords; they were in "good condition and fully rented with all the tenants paying on time." (*Id.* at ¶¶ 32, 35, 37, 40–41). Mikosz provided financial and rental information to Sor and his lender that showed the 3060 Bernice Property and 3068 Bernice Property would be profitable if Sor purchased them for $525,000 and $450,000, respectively. (*Id.* at ¶¶ 36, 38). Both properties were worth "significantly" more than those "bargain" prices, Mikosz bragged, so "would produce immediate equity" for Sor. (*Id.* at ¶ 39). During the negotiations,

Mikosz continued to represent herself as Sor's real estate agent and representative in the transactions. (*Id.* at ¶ 49).

Trusting Mikosz and Chojnacki, Sor entered two contracts, one on September 28, 2021 and another on September 30, 2021, to purchase the Bernice Properties. (*Id.* at ¶ 50; Dkts. 1-3, 1-4). Defendant Kathleen Long—Chojnacki's roommate and "paramour"—signed the purchase agreements as the seller for both properties and Defendant Rebecca Irwin signed as the seller's attorney. (Dkt. 1 ¶¶ 46, 53, 56). After closing, Sor agreed that Chojnacki's management companies, Mainstreet and Defendant EJ Investment Group Inc. ("EJ Investment"), would manage the Bernice Properties. (*Id.* at ¶ 63).

Unbeknownst to Sor, at the time of purchase in September 2021, Defendant TCF National Holdings, Inc. ("TCF National"), where Long served as its sole member and president, was in the process of buying the 3060 Bernice Property and 3068 Bernice Property for $360,000 and $335,000, respectively. (*Id.* at ¶¶ 51, 53–54, 56). TCF National purchased the Bernice Properties on December 20 and 22, 2021—just before transferring the titles to Sor on December 23, 2021. (*Id.* at ¶¶ 51, 54; Dkts. 1-5, 1-6, 1-7, 1-8). Chase RE received commissions of $18,375 and $15,750 at the closings. (Dkt. 1 ¶¶ 52, 55).

Throughout the dealings with Sor, Irwin acted on behalf of TCF National and Defendant Midwest Title and Closing Services LLC ("Midwest Title"). (*Id.* at ¶ 57). Through Midwest Title, Irwin provided "registered agent services to the various entities"; she housed "various legal operations" relating to the entities and deals; and she "provided corroboration for the fiction" about the true sellers. (*Id.* at ¶ 58). Midwest Title—managed by nonparty XYZABC, Inc., of which Irwin is the president—shares office space with Irwin, Chojnacki, Mikosz, Mainstreet, and EJ Investment, which manages Mainstreet. (*Id.* at ¶¶ 7–9, 80). On December 13, 2021, Irwin—as the

3

attorney for the "seller," TCF National, and Midwest Title's director—emailed Sor's lender and attorney, pushing for the closing to occur by December 20, 2021: "My client is looking to close both 3060 and 3068 Bernice on 12/20. Is this possible? How is final conditions [sic] coming along?" (*Id.* at ¶ 59; Dkt. 1-9). When Sor's attorney requested an additional week, Irwin replied the same day, insisting: "Seller needs to close 12/20." (Dkt. 1 ¶ 60; Dkt. 1-9). At the time of those emails, Irwin's client, TCF National, had not yet bought the Properties. (Dkt. 1 ¶ 61).

After Sor took ownership, he learned that the Bernice Properties had no "widower" or "longtime landlord" seller. (*Id.* at ¶¶ 53, 56). Nor were the properties' purchase prices of $525,000 and $450,000 "bargains," since Long bought them for $360,000 and $335,000 after entering purchase agreements with Sor. (*Id.* at ¶¶ 39, 51, 54). Contrary to Mikosz's representations, the Bernice Properties were not fully leased, multiple tenants were delinquent in their rent payments, and were in poor condition. (*Id.* at ¶¶ 47–48, 65–66). Sor has received numerous building-code violations about the Bernice Properties from the City of Lansing that existed before his purchase. (*Id.* at ¶ 71). Despite these issues, Defendants, through Mainstreet and EJ Investment, have charged Sor for unexplained costs and withheld any funds that tenants have paid. (*Id.* at ¶¶ 68–70). When Sor asked Mikosz, Chojnacki, Mainstreet, or EJ Investment to fix the violations, repairs were either never or shoddily performed—notwithstanding his payment of "exorbitant charges and billing." (*Id.* at ¶¶ 72–73). When Sor inquired about the previous owners, Mikosz replied that she "met one the owners once, and his wife used to manage (she passed away and that's why he decided to sell)." (*Id.* at ¶ 75). Defendants have tried to "repeat the scam" by offering Sor additional properties. (*Id.* at ¶ 82). Defendants have allegedly scammed at least eight other investors like Sor. (*Id.* at ¶¶ 83–84).

4

Sor filed this suit on April 18, 2023. (Dkt. 1).[2] In Count I of the Complaint, Sor alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c), (d). (Dkt. 1 ¶¶ 85–105). Count II is a common-law fraud claim against Mikosz and Chojnacki. (*Id.* at ¶¶ 106–113). Count III alleges that Mikosz and Chojnacki violated the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1 *et seq.* (*Id.* at ¶¶ 114–121). And Count IV alleges that Mikosz, Chojnacki, and Chase RE violated the Illinois Real Estate License Act (IRELA), 225 ILCS 454/1 *et seq.* (*Id.* at ¶¶ 122–28). Count V brings a negligent-misrepresentation claim against Mikosz and Chojnacki. (*Id.* at ¶¶ 129–36). Last, Count VI is an unjust enrichment claim against all Defendants. (*Id.* at ¶¶ 137–42). Chase RE, joined by the remaining Defendants, moves to dismiss the Complaint for failure to state a claim. (Dkt. 23; *see also* Dkts. 25, 27, 29–30, 32).

## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570 (7th Cir. 2023) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[2] This is one of eleven related actions proceeding before this Court. *See* Amended Complaint, *Malik v. Prairie Raynor LLC*, No. 23-cv-01182 (N.D. Ill. Mar. 2, 2023); Complaint, *Shankar v. Fairview Ave. Props. LLC*, No. 23-cv-01469 (N.D. Ill. Mar. 9, 2023); Complaint, *Abbas v. Mikosz*, No. 23-cv-01691 (N.D. Ill. Mar. 17, 2023); Complaint, *Chen v. Chojnacki*, No. 23-cv-02520 (N.D. Ill. Apr. 21, 2023); Complaint, *Michel v. Chojnacki*, No. 23-cv-02546 (N.D. Ill. Apr. 24, 2023); Complaint, *Said v. Chojnacki*, No. 23-cv-02858 (N.D. Ill. May 5, 2023); Amended Complaint, *Haynes v. Fairview Ave. Props. LLC*, No. 23-cv-01596 (N.D. Ill. May 16, 2023); Complaint, *Stafford v. Chojnacki*, No. 23-cv-03173 (N.D. Ill. May 19, 2023); Complaint, *Hui v. Chojnacki*, No. 23-cv-03430 (N.D. Ill. May 31, 2023); Complaint, *Fernandez v. Chojnacki*, No. 23-cv-04406 (N.D. Ill. July 7, 2023).

alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citing *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)).

For claims sounding in fraud, Federal Rule of Civil Procedure 9(b) requires plaintiffs to "state with particularly the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Thus, a plaintiff must "describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)).

## DISCUSSION

**I.     Racketeer Influenced and Corrupt Organizations Act (RICO) (Count I)**

In Count I, Sor alleges that Chojnacki, Mikosz, Long, TCF National, and Citypoint Illinois (collectively, "the § 1962(c) Defendants") violated § 1962(c), (Dkt. 1 ¶¶ 85–95), while the remaining Defendants Irwin, Midwest Title, EJ Investment, Mainstreet, and Chase RE (collectively, "the § 1962(d) Defendants") violated § 1962(d), (*id.* at ¶¶ 96–101). Defendants challenge Sor's claims under both subsections. Before diving into the RICO allegations, it is worth noting that the complaints in the ten related cases pending before this Court—all describing similar schemes to defraud other plaintiffs by the same or similar defendants[3]—give Abbas's claims a plausibility boost. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011) ("It is appropriate to accord limited corroborative weight to allegations in another's lawsuit.").

---

[3] *See* Amended Complaint, *Malik*, No. 23-cv-01182; Complaint, *Shankar*, No. 23-cv-01469; Complaint, *Abbas*, No. 23-cv-1691; Complaint, *Chen*, No. 23-cv-02520; Complaint, *Michel*, No. 23-cv-02546; Complaint, *Said*, No. 23-cv-02858; Amended Complaint, *Haynes*, No. 23-cv-01596; Complaint, *Stafford*, No. 23-cv-03173; Complaint, *Hui*, No. 23-cv-03430; Complaint, *Fernandez*, No. 23-cv-04406.

### A. Section 1962(c)

Under § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1964(c) "empowers private parties to bring lawsuits against those engaged in racketeering activity when that activity has caused them harm." *Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1093 (7th Cir. 2018) (citing *Rotella v. Wood*, 528 U.S. 549, 557 (2000)). To state a claim under § 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *accord Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 587–88 (7th Cir. 2017).

#### 1. Conduct of an Enterprise

A plaintiff's first step under § 1962(c) is to identify an "enterprise." *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013) (citation omitted). An "enterprise" means "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); *see also Walgreen*, 719 F.3d at 853 (observing that the statutory definition of "enterprise" is construed broadly). An "association-in-fact" enterprise has "three structural features: [1] a purpose, [2] relationships among those associated with the enterprise; and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009); *Sabrina*, 869 F.3d at 588. Put simply, this type of enterprise is "a group of persons associated together for a common purpose of engaging

7

in a course of conduct." *Boyle*, 556 U.S. at 946 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

Separate from the RICO enterprise, the plaintiff must point to a "person"—that is, the defendant. *Walgreen*, 719 F.3d at 853 (citing *Cedric Kushner*, 533 U.S. at 161); *see also Baker v. IBP, Inc.*, 357 F.3d 685, 692 (7th Cir. 2004) ("Without a difference between the defendant and the 'enterprise' there can be no violation of RICO."). "[T]hat 'person' must have conducted or participated in the conduct of the *enterprise's* affairs, not just its own affairs." *Walgreen*, 719 F.3d at 854 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)) (cleaned up). In this context, conduct refers to a defendant's operation or management of the enterprise. *See Sabrina*, 869 F.3d at 589 (citing *Reves*, 507 U.S. at 179).

Here, Sor has sufficiently pleaded an association-in-fact enterprise with purpose, relationships, and longevity. He alleges that the § 1962(c) Defendants—which no one disputes are RICO "persons"—"were associated in fact" as the "CitiPoint Enterprise." (Dkt. 1 ¶¶ 86–87). That enterprise's "primary purpose . . . was to lure and then fleece unsuspecting real estate investors" for financial gain. (*Id.* at ¶ 88). To ensure the CitiPoint Enterprise's profit at the expense of investors like Sor, its members allegedly worked on both sides of real-estate transactions. Mikosz and Chojnacki worked together from their shared office, doing business as CitiPoint (later, as Citypoint Illinois). After drawing Sor in with promises of too-good-to-be-true investment opportunities, Mikosz and Chojnacki purported to represent Sor as his real-estate agents in his purchase of the Properties. Before and after the purchase, Mikosz encouraged Sor to trust her numerous and repeated misstatements about the Properties' condition and profitability. After Sor agreed to buy the Properties for $975,000, Long, Chojnacki's paramour and roommate, through TCF National, bought the Properties for $695,000 and resold them to Sor at a $280,000 profit.

8

Behind the scenes, Irwin helped pulled the strings on the complex web of puppet entities that helped shield the conflicts of interest from view.

The sophisticated coordination and relationships among Defendants on both sides of Sor's purchase reflect "an unusual degree of economic interdependence" that helps nudge the existence of the CitiPoint Enterprise across the plausibility threshold. *See Bible v. U.S. Aid Funds, Inc.*, 799 F.3d 633, 656 (7th Cir. 2015); *see also, e.g.*, *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384, 388–89 (7th Cir. 2010) (holding that the plaintiff adequately alleged an enterprise by pointing to a coordinated fraudulent scheme); *cf. Walgreen*, 719 F.3d at 855 ("RICO does not penalize parallel, uncoordinated fraud." (citing *Boyle*, 556 U.S. at 947, n.4)). Indeed, that coordination appears essential to the success of the alleged scheme. Rather than "a run-of-the-mill commercial relationship where each entity acts in its individual capacity to pursue its individual self-interest," therefore, the CitiPoint Enterprise looks more like a "truly joint enterprise where each individual entity acts in concert with the others to pursue a common interest." *See Bible*, 799 F.3d at 655–56. Moreover, the alleged CitiPoint Enterprise lasted long enough for its members to pursue the enterprise's purpose of attracting investors and profiting from their purchases. *See Walgreen*, 719 F.3d at 853 (citing *Boyle*, 556 U.S. at 946). After Sor closed on the Properties, Defendants continued to offer him additional properties and, through Mainstreet and EJ Investment, charged him unspecified costs. Defendants have allegedly scammed eight other investors like Sor.

Defendants contend that Sor has failed to plead a distinct enterprise because there is "complete identity between the alleged 'persons' and the alleged members of the 'enterprise.'" (Dkt. 24 at 6–7); *see Baker*, 357 F.3d at 692. This argument rests on the mistaken view that an enterprise's members cannot be named as defendants. Of course, an entity cannot be liable under

9

RICO for "operat[ing] *itself* unlawfully." *See Baker*, 357 F.3d at 691–92; *Walgreen*, 719 F.3d at 854; *see also Haroco, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 747 F.2d 384, 402 (7th Cir. 1984), *aff'd on other grounds*, 473 U.S. 606 (1985). Yet, a plaintiff may state a RICO claim against each member of an association-in-fact enterprise. *See Haroco*, 747 F.2d at 401 ("Where persons associate 'in fact' for criminal purposes . . . each person may be held liable under RICO for his, her, or its participation in conducting the affairs of the association in fact through a pattern of racketeering activity.").

To satisfy RICO's distinctness requirement, the enterprise can "be either formally (as when there is incorporation) or practically (as when there are other people besides the proprietor working in the organization)" separate from the "person." *McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985); *see also Cedric Kushner*, 533 U.S. at 162–63 ("The corporate owner/employee, a natural person is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more 'separateness' than that." (citing *McCullough*, 757 F.2d at 144)). Sor's allegations suggest that the CitiPoint Enterprise is distinct from each of the § 1962(c) Defendants who served as members. Unlike the enterprise's members—who are "persons," capable of holding property—the CitiPoint Enterprise is a network of individuals and entities, associated in fact, and thus unable to "hold any interest in property or even be brought into court." *See Haroco*, 747 F.2d at 401. Accordingly, Sor has alleged the existence of a distinct enterprise.

Sor has also plausibly alleged that the § 1962(c) Defendants participated in operating or managing the CitiPoint Enterprise's affairs. *See Sabrina*, 869 F.3d at 589 ("[T]o satisfy the 'conduct' element, a plaintiff must allege that the defendant participated in the operation or management of the enterprise itself, and that the defendant played some part in directing the

enterprise's affairs." (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727–28 (7th Cir. 1998))) (cleaned up); *Reves*, 507 U.S. at 179; *see also Bible*, 799 F.3d at 657. The precise hierarchy of the CitiPoint Enterprise may be unclear. Yet, Sor has alleged that Chojnacki and Mikosz, through Citypoint Illinois, attracted and purported to represent unwitting investors while Long, through TCF National, purchased and resold properties to those investors. These allegations permit a reasonable inference that the § 1962(c) Defendants held leadership roles and took part in directing the enterprise.

### 2. Pattern of Racketeering Activity

A pattern of racketeering activity requires the completion of at least two predicate acts within ten years. *Bible*, 799 F.3d at 659; 18 U.S.C. § 1961(5). The two violations "must exhibit continuity plus relationship. Related predicate acts have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Sabrina*, 869 F.3d at 589 (quoting *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 828 (7th Cir. 2016)) (cleaned up); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "Continuity is 'centrally a temporal concept.'" *Empress*, 831 F.3d at 828 (quoting *H.J.*, 492 U.S. at 242). Analytically, "'[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* (quoting *H.J.*, 492 U.S. at 241).

While Defendants do not challenge Sor's satisfaction of the relationship-plus-continuity test, they argue that Sor has failed to adequately plead predicate acts. (Dkt. 24 at 7–10). As predicate acts, Sor alleges mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. (Dkt. 27 ¶¶ 91–92). "The elements of mail fraud are: (1) the defendant's participation in a scheme to

11

defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme." *Bible*, 799 F.3d at 657 (quoting *Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 298–99 (7th Cir. 2003)) (cleaned up); 18 U.S.C. § 1341. Wire fraud has the same elements, except that the defendant must use interstate wires instead of mail to further the scheme. *Bible*, 799 F.3d at 657 (citing *United States v. Green*, 648 F.3d 569, 577–78 (7th Cir. 2011)); 18 U.S.C. § 1343.

Sor's allegations of mail and wire fraud are subject to Rule 9(b)'s particularity requirement. *See Bible*, 799 F.3d at 658; Fed. R. Civ. P. 9(b). At a minimum, therefore, Sor must "describe the two predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Bible*, 799 F.3d at 658 (quoting *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001)). Yet, Rule 9(b) does not demand "form for form's sake": "although 'plaintiffs are not absolutely required to plead the specific date, place, or time of the fraudulent acts,' they still must 'use some alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Pirelli*, 631 F.3d at 442 (internal quotation omitted). The requisite level of detail may vary from case to case. *Id.* (citing *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1324 (7th Cir. 1998)). Since "fair notice is the 'most basic consideration underlying Rule 9(b),' in a case involving multiple defendants, 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (quoting *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777–78 (7th Cir. 1994)).

Sor alleges that "Defendants placed ads on the Internet and on social media with the intent to induce investors to participate in 'directly sourced' real estate opportunities." (Dkt. 1 ¶ 92(a)).

12

Yet, Defendants "actually intended to sell the duped investor their own significantly marked-up property." (*Id.*) Sor alleges further that Defendants engaged in a "sustained fiction," "replete with misrepresentations and calculated omissions" to mislead Sor into believing that he was buying property from a "widower landlord" or a "longtime landlord" at a bargain. (*Id.* at ¶ 92(b)). Plaintiff's RICO Count incorporates his previous, more detailed allegations. (*See id.* at 16). While some of these allegations lump Defendants together, others describe the "who, what, when, where, and how" of the fraud.

In July 2021, using wired communication, Mikosz replied to Sor's query to CitiPoint (now Citypoint Illinois) regarding multi-family real estate opportunities. (*Id.* ¶¶ 19–22). Throughout the summer of 2021, Mikosz, in Illinois, and Sor, in California, communicated by email, text, and phone. (*Id.* at ¶ 23). Mikosz told Sor that CitiPoint could help him buy underperforming real estate from "old" "retiring" "local landlords" and make "substantial cash flow" with proper management. (*Id.* at ¶¶ 24–28). Then, in around September 2021, Mikosz emailed Sor about the Bernice Properties and stated that the properties were in "good condition and fully rented with all tenants paying on time." (*Id.* at ¶¶ 31–32). Mikosz also insisted that the Properties were worth "significantly" more than their "bargain" offer prices. (*Id.* at ¶ 39). Sor alleges Mikosz made these false statements with intent to defraud him. (*Id.* at ¶¶ 32–35, 49, 53); *see Bible*, 799 F.3d at 658 (observing that fraudulent intent "may be alleged generally" (citing Fed. R. Civ. P. 9(b))).

Trusting in Mikosz and Chojnacki, who purported to be his real-estate agents, Sor agreed to the purchases on September 28, 2021 and September 30, 2021. (*Id.* at ¶ 50). In truth, the seller was TCF National, owned and controlled by Long. The price was not a "bargain" because TCF National purchased the Properties for $695,000 and sold them to Sor for $975,000. (*Id.* at ¶¶ 38–41). After closing, when Sor discovered that the Properties were in poor condition, in violation of

building code, not fully leased, and with delinquent tenants, Chojnacki and Mikosz allegedly prolonged the fraud by promising to hire contractors to fix the various building code violations and address the missing rent payments. (*Id.* at ¶¶ 47–48, 67–68, 72–73).

Long, using TCF National, participated in the alleged fraud by purchasing the Properties one and three days before Sor closed on December 23, 2021. (*Id.* at ¶¶ 4, 51, 54). Considering Long's relationship with Chojnacki, it is plausible to infer that she—and by extension, her LLCs—contributed to the scheme with fraudulent intent. Sor's well-pleaded allegations add up to at least two plausible instances of wire fraud—a sufficient pattern of racketeering activity. *See Empress*, 831 F.3d at 827 ("Each use of the wires can be an individual count of wire fraud and an individual RICO predicate for the purpose of establishing two predicate acts.").[4] Accordingly, Plaintiff's § 1962(c) claim survives.

### B. Section 1962(d)

Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). To state a claim under § 1962(d), a plaintiff "must allege that the defendant (1) agreed to maintain an interest in or control of an enterprise, or to participate in an enterprise's affairs, (2) through a pattern of racketeering activity, and (3) that the defendant agreed that some member of the conspiracy (not necessarily the defendant herself) would commit at least two predicate acts in furtherance of those goals." *Domanus v. Locke Lord LLP*, 847 F.3d 469, 479 (7th Cir. 2017) (citing *DeGuelle v. Camilli*, 664 F.3d 192, 204 (7th Cir. 2011)). Subsection (d)'s concern is "the agreement to participate in an endeavor, which if completed would violate a substantive provision of the Act." *Id.* (citing *Goren*, 847 F.3d at 731–32); *see also Empress*, 831 F.3d at 822–23 ("As with any conspiracy, a RICO

---

[4] Sor alleges that "[t]he CitiPoint Enterprise conducted its racketeering activity, in part, . . . through the mailing of checks." (*Id.* at ¶ 90).

conspirator 'must intend to further an endeavor which, if completed, would satisfy all elements of a substantive criminal offense, but it suffices that he would adopt the goal of furthering or facilitating the criminal endeavor.'" (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997))); *Domanus*, 847 F.3d at 479. Here, that substantive provision is subsection (c).

Defendants argue that Sor's § 1962(d) claim fails because his § 1962(c) claim is deficient. (Dkt. 24 at 6); *see, e.g.*, *Patel v. Mahajan*, 2012 WL 3234397, at *5 (N.D. Ill. Aug. 6, 2012) ("When a § 1962(c) claim fails, a § 1962(d) claim premised on the same facts fails as well." (collecting cases)). Yet, Sor has stated a claim under § 1962(c). Defendants raise no other arguments against Sor's § 1962(d) claim, and the Court declines to invent arguments on their behalf. *See Hicks v. Hepp*, 871 F.3d 513, 531 (7th Cir. 2017) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel.") (quoting *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011)). Thus, Count I may proceed in its entirety.

**II.     State-Law Claims (Counts II–VI)**

In Sor's remaining claims under state law, he alleges common-law fraud (Count II); violation of the ICFA (Count III); violation of the IRELA (Count IV); negligent misrepresentation (Count V); and unjust enrichment (Count VI). (Dkt. 1 ¶¶ 106–42). With scant citations to caselaw, Defendants contend that Counts II through V sound in fraud, and these claims fail to meet Rule 9(b)'s heightened pleading requirement "for the same reasons" as Sor's RICO claim. (Dkt. 24 at 10–13). In the same vein, Defendants point out that Sor's unjust-enrichment claim is "tied to the fate" of his other claims. (*Id.* at 13 (quoting *Vanzant v. Hill's Pet Nutrition*, 934 F.3d 730, 740 (7th Cir. 2019))); *see Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) ("Under Illinois law, there is no stand-alone claim for unjust enrichment."). Again, Sor has

15

stated a RICO claim, and the Court need not invent arguments for Defendants. *See Hicks*, 871 F.3d at 531. By failing to develop further arguments on the sufficiency of Sor's state-law claims, Defendants have waived any arguments they might have made. *See Wernstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005); *Bradley v. Village of University Park*, 59 F.4th 887, 897 (7th Cir. 2023).

## CONCLUSION

For the reasons above, Defendants' Motion to Dismiss [23] is denied in its entirety. Sor's claims in Counts I–VI may move forward consistent with this Opinion.

_____
Virginia M. Kendall
United States District Judge

Date: December 6, 2023